Samuel Wayne CATO et al., Plaintiffs,

v.

Lee PARHAM et al., Defendants.

No. PB-67-C-69.

United States District Court
E. D. Arkansas,
Pine Bluff Division.

July 25, 1968.

George Howard, Jr., Pine Bluff, Ark., for plaintiffs.

Robert V. Light, of Smith, Williams, Friday & Bowen, Little Rock, Ark., for defendants.

## Memorandum Opinion

HENLEY, Chief Judge.

This cause is now before the Court on the latest desegregation plan submitted by the Board of Directors of the Dollarway School District No. 2, Jefferson County, Arkansas. The plan in the form of a motion and a supporting statement was submitted on June 26. Objections to it have been filed by plaintiffs and intervenors.

The Court has given the plan careful consideration in the light of its contents, the entire record in this case, the record in its predecessor case, Dove v. Parham, E.D.Ark., 196 F.Supp. 944, and ruling opinions of the Supreme Court of the United States and of the Court of Appeals for this Circuit. The Supreme Court cases considered include, of course, the trilogy of decisions handed down by the Court on May 27 of the current year involving the public schools of New Kent County, Virginia; Gould, Arkansas; and Jackson, Tennessee, in all of which districts the school boards were trying to comply with the Brown decisions by employing the so-called "freedom of choice" or "free transfer" method of pupil assignment. Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; Raney v. Board of Education of Gould School District, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727; Monroe v. Board of Commissioners of the City of Jackson, Tenn., 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733.

The Court sees no occasion for an extended opinion dealing with the Board's present plan; enough has been written already in the course of this protracted litigation. The Court and counsel on both sides are thoroughly familiar with the history of the litigation and of the progress that has been made toward desegregation of student bodies and faculty down to this time.

 The Court will emphasize that there can now be no question that the "Briggs v. Elliott" approach which this Court has used in years past in this case and in others, and which the Board has used in this case, is no longer permissible. Under the Supreme Court decisions above cited it is the duty of local school boards to disestablish dual schools systems based on race, and to establish unitary systems in which there are no identifiable "white" schools and no identifiable "Negro" schools, but just "schools." And that duty must be discharged promptly; there is no longer room for mere "deliberate speed." Prior to the Supreme Court decisions of May 27 the Court of Appeals for this Circuit had so held in a number of cases with which counsel are familiar, and this Court had so defined the Board's duty in its unpublished memorandum opinion of January 12, 1968.

Nor is there any question that the schools in the Dollarway District are racially identifiable, and that the Board is still operating an unconstitutional dual system of schools. There are not now and never have been any white students assigned to the Townsend Park Schools; only slightly more than 50 Negroes attended the formerly all-white schools during the school term just past, and it is contemplated that only 71 of such students will be in attendance at those schools during the coming year. The percentage of Negroes heretofore enrolled and to be enrolled in the formerly all white schools in the District is less than the percentages involved in the New Kent County, Gould, and Jackson cases. The staff and faculty of the District are only partially desegregated.

■ It is not now the function of the Board merely to ameliorate the situation by assigning more Negro students and teachers to the formerly all white schools or by assigning more white teachers or even some white students to the Townsend Park System. It is the duty of the Board to eliminate the dual system itself, and to do so promptly.

■ The Supreme Court did not define the term "promptly" and did not set any hard and fast deadline to be met by all school districts or by any school district. But, the urgency of the language of the opinions and the urgency of the language of earlier opinions of the Court of Appeals for this Circuit makes it crystal clear that the time for "transitional plans" is running out. The Court thinks it a fair prediction that in general school districts will not be permitted to remain "in transition" beyond the beginning of the 1969–70 school term. In that connection the Court observes that in the El Dorado case, the Altheimer case, and the Marvell case, the Court of Appeals set September 1969 as the deadline for faculty desegregation, and this Court has set that deadline for such desegregation in this case.

The record in the case indicates that the Board has made some additional interracial staff and faculty assignments for the coming year and has assigned students for that year in accordance with the choices expressed by them in April. The Board proposes to operate without change during 1968–69 while it undertakes to decide what it is going to do after that session.

■ In view of the imminence of the opening of school this fall, in view of the plans for the term which have been made already, and in view of the fact that radical reorganization of the District's schools and their operations will require at least some thought and some time, the Court is going to approve that part of the Board's plan and permit it to operate during the 1968–69 school year in accordance with student and faculty assignments which have been made already.

The Court has a great deal of trouble with what the Board says that it plans to do in school years beginning with the 1969–70 session, and that part of the plan is disapproved. The Court might say that this is simply one more instance in this protracted litigation of the Court being unable to give overall long-range approval to anything which the Board has submitted.

The Board will be ordered at this time to disestablish its dual school system and to convert promptly to a unitary system, as now required by the Supreme Court of the United States.

The particular method which the Board may adopt to comply with the Court's order is primarily the concern of the Board and not that of the Court. The Board must consider the alternatives available to it and choose which of the alternatives it will pursue.

The Board asks that it be allowed until March 1, 1969, within which to make its study and report to the Court. The Court is not willing to grant the Board so long a time and does not believe that the Board will require that much time to make its study and decide upon a course of action. There are some observations which the Court desires to make in this connection.

First, as the Court advised counsel some weeks ago, the Court does not think that the Board is to be criticized for not abandoning freedom of choice in advance of the May decisions of the Supreme Court. However, in January of this year and prior thereto the Board and its attorneys must have known that the status of freedom of choice was extremely doubtful. The Court does think that the Board had no right simply to assume that the Supreme Court in the Virginia, Arkansas, and Tennessee cases would uphold the basic positions of the school boards there involved. The Court thinks that at least since January the Board was under a duty to begin making studies and considering alternatives to freedom of choice.

The Dollarway District has never come up with a desegregation plan which did not provoke further litigation, and the Court cannot assume now that any further plan which the Board may submit will be acceptable on its face to the plaintiffs and intervenors. If the Board is given until March 1 to submit a plan, and if litigation follows, it might not be completed at the appellate level prior to the opening of schools in September 1969, and the schools would open with the rights and liabilities of the parties clouded with doubt, a situation which would be highly undesirable. An earlier submission of a plan followed by a prompt ruling on it by this Court would probably enable the Court of Appeals at least to pass on the plan prior to the opening of the 1969–70 session.

The Court realizes that the Board is going to be required to give some thought to what it is going to do and may be required to conduct some studies; but, if the Board starts now and moves with reasonable diligence, it should be in a position to submit a plan not later than December 1, 1968. In that plan the Board should indicate the alternatives which it deems available to it, and if it cares to do so may indicate to the Court which alternative it prefers.

There are two words of caution which the Court thinks that it should give to the Board in connection with whatever plan it submits.

The present plan and the brief in support thereof indicate a continuing hope on the Board's part that it can achieve its objective by the freedom of choice method of student assignments. The Court fears that that hope is unrealistic. Freedom of choice at Dollarway up to this time certainly has not brought about a unitary school system, and the Court doubts that it ever will.

A phrase appearing in the plan suggests that if the Board abandons freedom of choice effective as of September 1969 it may want a period of transition within which to fully implement the new method of pupil assignment, whatever that new method may be. The Court is not going to prejudge any plan or request which the Board may submit, but the Board must be aware that if any additional transition period is allowed beyond the opening of school in 1969, the length of that period, if any, will be short indeed.

In their objections to the plan plaintiffs and intervenors have renewed their request for the allowance of a reasonable attorney's fee. Such fees have not been allowed by the Court in this case and in similar cases in the past. In Kemp v. Beasley, II, 8 Cir., 389 F.2d 178, 191, the Court considered and denied a similar request for a fee in the El Dorado school case. However, it seems clear that in disallowing the fee the Court was seeking as much as anything else to promote what it hoped would be more harmonious relations between the El Dorado Board and the Negro school patrons.

This litigation has been going on for nine years. While the Court does not impugn the Board's good faith in trying to carry out the mandate of the Brown decisions, as the Board understood that mandate, it cannot be gainsaid that whatever progress has been made in the direction of desegregation at Dollarway has followed judicial prodding. And this Court really sees nothing today which points toward what the Court of Appeals called "a more cooperative atmosphere" in the second El Dorado case. Kemp v. Beasley, II, supra, 389 F.2d at 191.

In a case arising under the Public Accommodations Title of the Civil Rights Act of 1964, which Title expressly authorizes the award of a fee in a suit brought under it, the Supreme Court has held that the allowance of a fee should be the rule, rather than the exception. Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed. 2d 1263, decided March 19, 1968. While that decision is not binding here, it is suggestive.

The Court feels that the allowance of a fee is in order at this stage of this case, and a fee of $700.00 will be

allowed as compensation of counsel for services rendered from September 1967 down to this time.

A decree in accordance with the foregoing will be entered.