**Samuel Wayne CATO et al., Plaintiffs,**

v.

**Lee PARHAM et al., Defendants.**

**No. PB–67–C–69**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

Sept. 15, 1970.

1036, 90 S.Ct. 689, 24 L.Ed.2d 680 (U.S.Sup.Ct. Jan. 19, 1970), set for arg., 38 U.S.L.W. 3897 (U.S.Sup.Ct. April 1970).

George Howard, Jr., Pine Bluff, Ark., for plaintiffs.

Robert V. Light and G. Ross Smith, Smith, Williams, Friday & Bowen, Little Rock, Ark., for defendants.

## Memorandum Opinion

HENLEY, Chief Judge.

On July 25, 1969, this Court filed the most recent of its long line of opinions in this protracted case involving the racial integration of the public schools of the Dollarway Public School District No. 2, Jefferson County, Arkansas. Cato v. Parham, E.D.Ark., 302 F.Supp. 129. On the same day the Court filed its opinion in the case involving the public schools of North Little Rock, Arkansas. Graves v. Board of Education, E.D.Ark., 302 F.Supp. 136. Appropriate decrees were entered in both cases.

The decree entered in this case provided in substance that the Dollarway School District would be required with respect to the 1970–71 school year and subsequent years to disestablish completely its historically established and maintained dual system of racially identifiable schools and to replace it with a single unitary school system. Integration was to extend to students, faculty, staff, transportation, facilities, and services. The plan that the District had submitted was disapproved in general, but the District was permitted with certain provisos spelled out in the decree to operate under that plan during the 1969–70 school year.

The District appealed to the Court of Appeals, but the appeal was not pressed. On May 13, 1970, the Court of Appeals handed down its latest decision in the Little Rock School case reversing the action of the late Judge Gordon E. Young approving an integration plan submitted by the Little Rock School Board. Clark v. Board of Education, 8 Cir., 426 F.2d 1035.

Thereafter the District dismissed its appeal and on August 7 filed a new plan for 1970–71 and subsequent years. On August 20 plaintiffs filed objections to the plan, and the matter is now before the Court for determination.

There is no dispute about controlling facts, and the Court has deemed a formal evidentiary hearing to be unnecessary. However, before reaching any decision with respect to the plan, the Court conferred with counsel on both sides and obtained from them certain information about present conditions at Dollarway.

For reasons beyond the control of both Court and counsel the Court was not able to dispose of this phase of the Dollarway controversy prior to the date set by the Dollarway School Board for the opening of school. No effort was made to prevent the opening of the schools, and they opened on schedule and are now operating under the Board's present plan.

As far as student bodies are concerned, the Court is satisfied that the new plan has effectively integrated the junior and senior high grades, and there is no reason to suppose that they will not remain integrated in the future.

As to faculty, the Court has always been convinced that at Dollarway faculty desegregation would take care of itself when the student bodies were integrated. The Court does not understand that plaintiffs are complaining seriously about faculty desegregation at the secondary school level, at least at this time, and the Court will assume that the secondary school faculties are satisfactorily integrated at least for the time being.

A quite different picture is presented at the elementary school level. There are three elementary schools: Dollarway Elementary (formerly all white); Pinecrest Elementary (formerly all white); and Townsend Park Elementary (formerly all Negro). Dollarway and Pinecrest are located in predominantly white neighborhoods; Townsend Park

is located in a neighborhood that is almost exclusively Negro. All three schools are comparatively close to each other. Townsend Park is located east of U. S. Highway 65 and the tracks of the Missouri Pacific and St. Louis-Southwestern Railroad Companies; Dollarway and Pinecrest are located west of the tracks and the highway.

The tracks and the highway run roughly north and south throughout the District. The majority of black elementary school students live east of the highway and tracks, and the majority of white students live west of them.

With certain minor qualifications, elementary students have been assigned to schools on the basis of geographical zones geared to the neighborhood school concept and which naturally reflect the racially segregated housing pattern of the District. It might be pointed out that Dollarway Elementary and Townsend Park Elementary were both built prior to the *Brown* decisions in 1954 and 1955 so that Dollarway was originally a legally established "white" school and so that Townsend Park was originally a legally established "Negro" school. Pinecrest was built substantially after the *Brown* cases were decided but was located in an almost exclusively white neighborhood.

Subject to one exception, which is not important, the present plan for the elementary schools is exactly the same as the plan which the Court permitted the Board to use during 1969–70 but the use of which in later years was expressly disapproved by the Court.

The Court has obtained from counsel the following enrollment data for the elementary schools. There are 1566 elementary students in the District of whom 55 percent are black. The enrollment at Dollarway is 77 percent white; the enrollment at Pinecrest is 71 percent white. There are 648 students enrolled at Townsend Park. Of those students only 15 (less than 2.5 percent) are white, and

it is doubtful that they will remain enrolled there unless reenforced substantially by other members of their race.

As to faculty, the plan states that at the elementary level no more than 75 percent of the teachers assigned to each school will be of the same race. The Court has no figures on actual elementary faculty assignments, but the Court understands that the Townsend Park faculty is very predominantly black, and that the faculties of the other two elementary schools are predominantly white.

■ There was nothing ambiguous about the Court's 1969 decree. The Board was mandatorily enjoined to completely desegregate its staff and faculties by the beginning of the current school year and to keep them integrated in future years. And the Board was also mandatorily and specifically ordered to integrate its elementary schools by the beginning of this year and to keep them integrated. Further, in a letter to counsel the Court suggested certain feasible combinations of elementary grades that would effectively disestablish the dual elementary school system.

Manifestly, the Board has not complied with the Court's decree and its plan will not be approved.[1] The Court would be justified in ending this opinion with the statement just made and would not be averse to doing so. However, the Court believes that some additional comment may be in order.

### I.

This Court has been dealing with the Dollarway District ever since the suit was filed as "Dove v. Parham" in 1959, 176 F.Supp. 242, and has acquired a good deal of knowledge about the District. Generally speaking, the District's population is divided about equally between whites and Negroes although the white population may have declined somewhat in recent years. Despite the nearly equal division of the population racially, the white community of the District has

---

1. Plaintifs have chosen not to cite the Board for contempt although they might well have moved in that direction.

always been in effective control of the District's affairs, and in the past that community has been violently opposed to the whole idea of desegregation even as that term was understood by many in the days prior to the 1968 decisions of the Supreme Court in the New Kent County, Virginia Case, the Gould, Arkansas Case, and the Jackson, Tennessee Case.[2]

It is the recollection of the Court, although the Court is not positive, that when the litigation was commenced and for some years thereafter all five members of the School Board were white. Then for a substantial period of time there was one Negro member on the Board, and at the present time there are two. The defendant, Lee Parham, has been President of the Board during the entire period, and up until very recently Mr. Charles Fallis served as Superintendent of Schools.

The white members of the Board, assisted by Mr. Fallis, and counselled by able lawyers who are specialists in this field of litigation, have fought integration by every legal device available to them. They have been before this Court and before the Court of Appeals time and time again. The more recent opinions dealing with Dollarway are: Cato v. Parham, E.D.Ark., 293 F.Supp. 1375, aff'd 8 Cir., 403 F.2d 12; Cato v. Parham, E.D.Ark., 297 F.Supp. 403; and, of course, the 1969 opinion of this Court heretofore cited.

Up until very recently the Board, despite judicial reversals, enjoyed a rather high degree of success in holding integration to a minimum, but when "freedom of choice" was disapproved for Dollarway in 1968, and when residential zoning for the District was disapproved in principle in March 1969, the death knell had sounded for segregation, wheth-er de jure or de facto, in the District, and the sands of time have now run out.

## II.

Although the integration of a school district cannot be made to yield to popular opposition to it, whether that opposition comes from whites or blacks, the Court thinks that when integration of the schools of a district like Dollarway is categorically ordered, the patrons of the district have a right to have the Court's action explained, and particularly they have a right to know why such action is being taken in their district if it is not being taken in some other district or districts. The federal courts have no more right to discriminate invidiously between school districts than school boards have to discriminate invidiously between students or teachers. Those observations lead the Court to refer to the actions that it has recently taken with respect to the Little Rock School District, the North Little Rock School District, and the Pulaski County Special School District.[3]

In August of the current year the Court tried all three of those cases "back to back" and decided all three of them on August 17. In all three cases the Court permitted the operation for this year only of some racially identifiable elementary schools, located pursuant to the neighborhood school concept, provided that more complete integration at the high school and junior high school levels is achieved.

Immediate appeals were taken by the Negro class plaintiffs in those cases, and the appeals are now pending. It is the information of the Court that appellants applied to the Court of Appeals for immediate hearing and summary reversal of the Little Rock and North Little Rock decisions, and that the applications were

---

2. Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; Raney v. Board of Education, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727; Monroe v. Board of Commissioner, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733.

3. The Dollarway District does not border any of those districts, but Pulaski County lies just to the north of Jefferson County.

denied by an equally divided Court. It is also the Court's information that dissenting opinions were filed that were sharply critical of this Court's decisions. That is beside the point, of course, except to the extent that it may indicate that the appellate fate of the Court's decisions is at best doubtful. However, the decisions will stand until they are reversed if that contingency occurs, and the affected districts will doubtless operate in the meantime under the plans approved by the Court.

Dollarway may be distinguished from the cases involving the Pulaski County districts on a number of grounds.

To start with, the present plan of the District was not formulated on the basis of anything that the Court said or did in the other cases; we have, therefore, no question of "reliance" by Dollarway on the Pulaski County decisions. The Court's 1969 directive to the District was clear, and the appeal from the Court's decree was dismissed. The District simply chose to ignore an unambiguous and categorical court order, and that cannot be permitted.[4]

More basically, writing about both North Little Rock and Dollarway in 1969 the Court took occasion to draw distinctions between the two districts that are still valid as between those districts and which are also apparent when Dollarway is compared to the Little Rock District or to the Pulaski County Special School District. In the North Little Rock case the Court thought that those distinctions were of "crucial importance." Graves v. Board of Education, supra, 302 F.Supp. at 142.

The Court then went on to say (Ibid.):

"The Dollarway District has been in litigation for about eleven years and has stubbornly resisted integration; it has been on notice since the summer of 1968 that it would be required to establish a unitary school system as of the opening of school this year. It has few schools, and the organization of the District is simple. A feasible alternative to attendance zoning was pointed out to the Dollarway Board in the Court's opinion rendered in March of this year when the Court rejected the Board's original zoning plan. Cato v. Parham, E.D.Ark., 297 F.Supp. 403. Further, the Dollarway District owns a number of school busses and transports a substantial number of students to the schools located in the District proper from the outlying Hardin Area several miles distant from the schools. The Dollarway District can largely comply with today's order of the Court by simply assigning the Hardin Area students to the Townsend Park Schools.

"The situation at North Little Rock is quite different. It does not have the litigious history of Dollarway; it has many schools and many students; the opening of school is imminent; according to counsel the summer staff of the District is minimal; as stated, the District owns no busses and has no means of obtaining any either on short or long notice. Further, what the District is going to have to do ultimately in the way of student assignments is highly uncertain."

And in the Pulaski County Special School District Case (Zinnamon v. Board of Education, No. LR–68–C–154), the Court pointed out that a dual elementary school system is no more tolerable constitutionally than is a dual secondary system where the dual elementary system can be disestablished by means that are feasible and less stringent than school closings or pairings involving the transportation of large numbers of young students for substantial distances for the sake of integration alone.

---

4. The Court suspects that the Board hoped that it would be able to get its schools open before the Court disapproved the plan, as in fact it succeeded in doing, and that with the schools actually open and in operation the Court would let the operation continue undisturbed for the well known "one more year." In that hope, to the extent that it was entertained, the Board is fated to disappointment.

The Court thinks that the difference that it has recognized between simply structured small school districts like Dollarway and large complex districts such as the Pulaski County districts was in the mind of the Supreme Court itself in *Brown II*, 349 U.S. 294, 300–301, 75 S. Ct. 753, 99 L.Ed. 1083, when it referred to a number of problems that a given school district may encounter in the transitional process of integration. Some of those problems that exist in large districts like Little Rock or North Little Rock will hardly be found in a smaller district.

The complete disestablishment of the dual school system at Dollarway from top to bottom has never been unfeasible and available means to that end have always been obvious. There are only a few schools. The schools are located within comparatively short distances of each other so that transportation is no great problem, and the District has traditionally bused many of its students to and from school. What problems there are at the elementary school level, principally the location of the elementary schools in relation to the highway and railroad tracks are not comparable to those to be encountered in the Little Rock, North Little Rock, and Pulaski County schools should immediate and total disestablishment of dual elementary schools in those districts be ordered.

Nor does a small, simply organized district like Dollarway suffer, as does a large, complex district, from the still existing lack of clear judicial guidelines as to what is required of a school district in order to comply with its duty to "disestablish" a dual system of racially identifiable schools.

Under ruling decisions of the Supreme Court of the United States all school districts in Arkansas, whether large or small, simple or complex, must "disestablish" dual school systems. In a small district what constitutes "disestablishment" is reasonably clear in most instances, just as it was clear with respect to the Altheimer School District located, like Dollarway, in Jefferson County, Kelley v. Altheimer Public School District, No. 22, E.D.Ark., 297 F. Supp. 753, just as it was clear with respect to the schools at Gould in Lincoln County, Raney v. Board of Education, supra, and just as it is clear with respect to Dollarway. But what constitutes "disestablishment" of a dual system in a large district, complexly organized, having many schools scattered over a large area, and having many students whose parents differ widely culturally and economically, is much less clear. Moreover, a good many questions exist with respect to districts like Little Rock that the federal courts have not yet answered authoritatively. It may not be amiss to mention some of those questions.

In order to disestablish a dual system is it necessary to integrate every school in the district? Must "racial balance" be achieved in every school of the district, regardless of what it takes to achieve it?

Is anything left of the neighborhood school concept? Is there any difference between a neighborhood school established in pre-Brown days as a "Negro" school in a Negro neighborhood or as a "white" school in a white neighborhood and a neighborhood school established post-Brown without regard to race but located in a racially segregated neighborhood?

Does a southern school district affected by federal decisions have any right to consider in making assignments nonracial criteria which are generally accepted as valid in other sections of the country or must integration take precedence over everything else?

Is a school district free to take into consideration its own financial ability or inability to carry out a plan of complete integration? If a district assigns individual students to particular schools to achieve integration, is is required to bear the costs of getting children to and from school either with or without regard to their ability or the ability of their parents to bear the cost?

Do Negro students have any right to have racially identifiable schools in which they are in the majority preserved, or are they subject to being forced into minority positions in all schools of a particular district?[5]

But, those questions and others that might be mentioned are really subordinate to the more basic question of when is a dual school system "disestablished" within the constitutional meaning of that term? That term was not defined in *New Kent County* et al., supra. It was not defined in the later case of Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed. 2d 19; and it has not been defined by the Court of Appeals for this Circuit.

It should be obvious that this Court is concerned with the constitutional duties of school districts. It is not directly concerned with what districts must do in order to comply with the requirements of federal administrative agencies, such as the Department of Health, Education and Welfare, in order to receive monetary grants in aid of education, although, to be sure, the views of administrative agencies may be helpful.

No one would dispute that a public school system is completely "integrated" or "unitary" if there is complete racial balance of student bodies, staffs, and faculties in all of the schools of the District. But, does the Constitution require that such be done? That is the question that as yet has not been answered.

Constitutional requirements are frequently minimal. The State agency affected must do so much, but it is not constitutionally required to do more. If the constitutional requirement is complete and absolute integration, regardless of everything else including undesirable side effects, that is the end of the matter, and school districts need no guidelines to direct them to that objective.

However, the Courts have not yet so held. If the Constitution requires less than total integration, affected school districts are entitled to know what that "less" is. Of course, that is not to say that a school district ought to limit its integration efforts to the constitutional minimum.

In its 1969 opinions in this case and in the North Little Rock Case the Court expressed the hope that when the Court of Appeals decided the Little Rock Case then pending before it it would answer some of the questions that have been mentioned here and would lay down some discernible guidelines for the District Courts and for Arkansas school districts with integration problems. The Court does not consider that *Clark*, supra, fulfilled the Court's hope. Rather, Clark followed a clearly discernible trend of appellate decision which indicates that whatever the District Courts may require short of all-out integration, the Court of Appeals is going to require more, but without saying how much more.

It may be that the Court of Appeals is not willing to lay down any guidelines in advance of such action by the Supreme Court of the United States, which action may be forthcoming reasonably soon in connection with the cases that are to be argued before the Supreme Court next month. Or it may be that the Court of Appeals does not agree with this Court that a school district is entitled to know what its minimum obligation is and is unwilling to define that obligation.

5.  That question is not academic in Pulaski County. The most vocal complaints in Little Rock, North Little Rock, and in the Special District about the plans of the Boards of those districts and about the decrees of the Court have come from Negroes. The Negro community in Little Rock does not want Horace Mann High School phased out; the Negro community in North Little Rock does not want Jones Junior High School closed; and Negroes in the practically all Negro College Station community in the Special District do not want to be bused to formerly all white schools. The Court has already received one deputation from Mann and a larger deputation from College Station, and may well receive one from Jones.

Be that as it may, this Court feels frankly that if the Court of Appeals, for which this Court has the highest respect, is not willing to prescribe standards of general applicability, it should either be more willing than it has been recently to accept the considered judgments of the District Courts in particular cases or should assume the responsibility of telling affected districts on an ad hoc basis what plans the Court of Appeals will be willing to approve.

## III

There remains for consideration the relief to be granted now in this case.

■ An order will be entered commanding the Board to integrate the elementary schools forthwith and to have them operating on an integrated basis not later than the first Monday of October of the current year. The integration must include both students and faculties. If the teachers are transferred along with the students, the problem of elementary faculty integration will, in the Court's opinion, be solved automatically at least in large measure.

It is obvious that the schools are going to have to be paired. If the Board desires to use the pairing suggestions contained in the Court's 1969 letter to which reference has been made, it may do so. If it desires to use some other method of pairing, it is free to do so provided that full integration of the elementary grades, all six of them, is achieved.

Not later than September 25 the Board will file a report with the Court stating what it plans to do about both elementary students and elementary teachers.

■ Since there has been no hearing in connection with the present plan, an award of a large fee to counsel for plaintiffs would not be justified. Counsel are entitled to some fee, however, and a fee of $250 is now assessed against the District.