**Delores CLARK et al., Plaintiffs,**

v.

**BOARD OF EDUCATION OF the LITTLE ROCK SCHOOL DISTRICT et al., Defendants.**

**No. LR–64–C–155.**

United States District Court,
E. D. Arkansas, W. D.

Sept. 24, 1970.

John W. Walker, Little Rock, Ark., for plaintiffs.

Hershel Friday, Robert V. Light, Glenn Ross Smith, of Smith, Williams, Friday & Bowen, Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

HENLEY, Chief Judge.

On August 17 of the current year this Court filed its Memorandum Opinion and a decree in this case involving the racial integration of the public schools of the City of Little Rock, Arkansas. The decree approved the Little Rock School Board's latest plan with respect to the elementary schools of the District for the current school year only. The plan for the high school grades 10, 11, and 12 was approved for this year provided that the Board was willing to make certain commitments spelled out in the opinion and appearing in Paragraph 3 of the decree. With respect to the junior high grades 7, 8, and 9 the plan was disapproved, and the following directive was given to the Board:

"4 * * * The District is now mandatorily enjoined to proceed forthwith to commence the disestablishment of the dual junior high school system that it is now operating; the disestablishment of that system must be effectively commenced as of the beginning of the 1970–71 school year and must be completed as of the beginning of the 1971–72 school year. By September 1, 1970, the District will file a statement with the Court setting forth what it proposes to do with respect to the 1970–71 and what it expects to do with respect to 1971–72. If the Court is not able to approve the statement with respect to 1970–71, the District will not be permitted to open its junior high schools until a plan for that year is submitted which the Court can approve."

The Court's decree was not satisfactory to the Negro plaintiffs, and on the same day on which the decree was filed plaintiffs filed a Notice of Appeal to the Court of Appeals for the Eighth Circuit. That appeal is now pending, along with a cross appeal taken by the Board, and is set down for oral argument, together with the North Little Rock case and the El Dorado case, on October 14 of the current year. Two days before that the Supreme Court of the United States will hear arguments in certain school cases now pending before it and which apparently present some of the same questions as are presented in the Arkansas cases just mentioned.

On September 1, 1970, the Board, as ordered by this Court, filed its "Revised Desegregation Plan For the 1970–71 And Subsequent School Years Pursuant To The Court's Decree Entered August 17, 1970." In its revised plan the Board made the commitments with respect to the high schools that the Court had required by its decree, and the Board also set out what it proposed to do with respect to the junior high schools for this year and for later years.

The pendency of the appeal taken by the plaintiffs caused a serious question to arise in the mind of the Court as to whether it had jurisdiction to pass upon the Board's revised plan without permission from the appellate Court. On September 4, 1970, four days before the scheduled opening of the Little Rock schools, the Court submitted to the Court of Appeals a formal certificate as to the view that it took of the junior high school plan. After outlining the parliamentary situation the certificate stated:

"In view of the pendency of the appeal the Court considers that its jurisdiction to pass upon the defendants' revised plan is at best doubtful in the absence of permission from the Court of Appeals.

"The Court has examined the revised plan and if it is given permission to do so will approve the plan for the 1970–71 school year only so that all of the schools in the City of Little Rock may open on schedule, and now so certifies. The Court does not consider it appropriate to express an opinion with respect to the revised plan

as it may operate in years after 1970–71, particularly in view of the pendency of the appeal that has been mentioned and in view of the current pendency of public school integration cases before the Supreme Court of the United States.

"Counsel for the respective parties are free to apply to the Court of Appeals for a limited order of remand for further proceedings in accordance with the foregoing, or for such other proceedings, if any, as the Court of Appeals may direct."

On the same day as that on which this Court submitted its certificate to the Court of Appeals that Court denied a motion of the appellants for an immediate hearing, and on September 18, 1970, denied rehearing with respect to its action of September 4. In the meantime, the Board had filed with the Court of Appeals a motion for a limited remand to this Court for action in line with the Court's certificate of September 4. That motion was granted on September 18, and the case was sent back to this Court with the following directive:

"The United States District Court for the Eastern District of Arkansas is directed to consider the amended plan filed September 1, 1970, by the Board of Education of the Little Rock School District for the school years 1970–71 and 1971–72. The District Court is to consider objections to the plan, if any, and, if necessary, the District Court is to take evidence in connection therewith. The District Court is to make findings, to enter its order, and is to certify a copy of its order, together with a transcript of evidence taken in the District Court, to this Court. The hearing directed herein shall be conducted by the District Court and the District Court's order certified to this Court prior to October 2, 1970."

Counsel for the Board evidently considered that the Court's certificate of September 4 was a sufficient warrant for the opening of the junior high schools along with the other schools on September 8, and all of the schools were opened on that date. Whether the junior high schools should have been so opened in advance of formal judicial approval of the junior high school plan for this year may be questioned. However, it appears that when the Board filed with the Court of Appeals its motion for a limited remand of the case which was later granted it also advised the Court of Appeals of its plan to open the junior high schools on September 8. The schools were in fact opened and are operating, and the Court is going to approve the Board's plan for this year. In such circumstances the Court will not pursue further the question of the propriety of the opening.

As was expected, plaintiffs and intervenors filed objections to the plan. The plan and the objections thereto have been considered, and this memorandum incorporates the Court's findings of fact and conclusions of law which the Court now certifies to the Court of Appeals along with a transcript of the evidence heard on September 22 in open court.

With respect to the junior high schools the Board's efforts for 1970–71 will be limited to closing the seventh grade at the predominantly Negro West Side Junior High School and distributing the affected students among the predominantly all white Forest Heights, Henderson, and Southwest Junior High Schools. West Side is to be closed completely as of the beginning of the 1971–72 school year.

This year's action with respect to the seventh grade at West Side should reduce substantially the ratio of blacks to whites in the remaining grades, and increase substantially the ratio of blacks to whites at Forest Heights, Henderson, and Southwest.

It is arguable that what the Board has done with respect to the junior high schools this year is minimal. The record reflects, however, that even now the Board is faced with a very substantial transportation problem brought about by the closing of the seventh grade at West Side and the tenth grade at Horace

Mann High School. The Board has made extensive efforts to solve that problem and is continuing to make them, and in the circumstances the Court thinks that it would be unreasonable to require the Board to do any more than it has done at the junior high school level this year. As indicated in the Court's certificate of September 4, the Board's plan for the junior high schools will be approved for this year only.

With respect to future years the Board's proposal calls for somewhat more extended comment.

Preliminary to a discussion of the plan for future years, it may be helpful to list and describe briefly the District's high schools and junior high schools as they now exist and to comment briefly upon them. The description and comment will not refer to Metropolitan High School, which is a fully integrated vocational training facility not involved in controversy here.

### Senior High Schools

*Central High School.* This school was built in 1926 as a legally established white high school. See Aaron v. Cooper, D.C.Ark., 143 F.Supp. 855, 861. It is located in the central part of the City and replaced the old Little Rock High School which was located in the eastern part of the City. Central is now integrated but is in some danger of becoming an all black or predominantly black school.

*Horace Mann High School.* Horace Mann was built in 1956, after the Brown decisions were handed down, but it has always been an all black or very predominantly black facility. It was located in an area the population of which at the time was largely mixed; however, with the passage of time the area has become very predominantly black. Judge Miller made mention of Mann in the very first decision involving the Little Rock District. Aaron v. Cooper, supra, 143 F.Supp. 855 at 861.

*Hall High School.* Construction of what is now Hall High School was begun in 1956 and completed in 1957; the name proposed originally for the school was West End High School. Aaron v. Cooper, supra. The school was located in an area that was somewhat sparsely populated at the time and which contained a number of Negro families. That area has developed rapidly into an almost entirely white neighborhood, and up until very recently Hall was an all white high school.

*Parkview High School.* Parkview was built long after *Brown* in a neighborhood that was developing into a predominantly white neighborhood.

### Junior High Schools

*West Side Junior High School.* Built pre-Brown as a legally established white junior high school. Originally the West Side neighborhood was racially mixed, but the area has now become predominantly black and West Side now has a predominantly black student body.

*Dunbar Junior High School.* Built as a Negro secondary school a number of years before the Brown cases were decided. It has been remodeled and enlarged in recent years. It has always been identifiable as a Negro school.

*Pulaski Heights Junior High School.* Built pre-Brown as a white school, but a rather high degree of integration has been achieved.

*Booker Junior High School.* Built pre-Brown in a mixed neighborhood close to Horace Mann High School. It is an identifiable Negro school at this time.

*Forest Heights Junior High School.* Built post-Brown in a predominantly white neighborhood. It is identifiable as a white school.

*Henderson Junior High School.* Built quite recently in the western part of the City in an all white neighborhood. It is identifiable as a white school.

*Southwest Junior High School.* Built quite recently in a predominantly white neighborhood in the western part of the City. It is identifiable as a white school.

With respect to 1971–72 and future years the District proposes to operate six rather than seven junior high schools,

and it proposes to restructure the schools in the central and western parts of the City.

Booker Junior High School is to be converted into an elementary school, and the Board projects that the 1971–72 enrollment for that school will be about half white and half black. The present Horace Mann High School is to be converted into a junior high school to be known as the "Booker-Mann Junior High Center" (Booker-Mann).

All seventh, eighth, and ninth grade students residing east of a line running north and south through the District from the Arkansas River to the southern boundary of the District will be assigned to Booker-Mann. That line will run along Broadway from the Broadway Bridge to West Roosevelt Road where it will jog one block to the west and will then run south along Arch Street to the District's southern boundary.

Turning now to the junior high schools located west of the Broadway-Arch Street line, the Board proposes to use Dunbar and Pulaski Heights for the instruction of ninth grade students only. Seventh and eighth grade students will receive instruction at Forest Heights, Henderson, and Southwest.

The junior high students will be assigned to schools basically by reference to geographical attendance zones. The ninth grade zones have not yet been determined, but DX-201 depicts the seventh and eighth grade zones.

An examination of that exhibit, which is a large vari-colored map of the District, reveals that the Board has engaged in extensive gerrymandering of zone boundaries for the purpose of achieving at the seventh and eighth grade levels the degree of integration or racial balance presently to be mentioned.

It is immediately obvious that a great many junior high students will have to be transported, by one means or another, for long distances to and from the schools to which they will be assigned. The District does not know definitely at this time what its transportation plans for 1971–72 will be, but it appears that the Board plans to continue in that year and in future years its present policy of providing transportation for at least the more needy students.

The Board says that its plan for the junior high schools has a number of educational and other advantages, some of which are said to be:

1. An enriched program at Booker-Mann for poor students.

2. A reduced need for massive transportation of students.

3. The closing of two old elementary schools in the eastern part of the City.

4. Stabilization of housing patterns in the District and the discouragement of the establishment of private schools for white students.

5. The furnishing to residents of the Booker-Mann area of "a center for community activities, pride, and allegiance that would, otherwise, be removed when Mann High School is phased out."[1]

It may be conceded that in school districts not affected by *Brown* and by later decisions of the Supreme Court the alleged educational and social advantages put forward by the Little Rock Board might well justify the arrangement of schools and the assignment of students thereto in the manner proposed by the Board rather than in some other arrangement and method of assignment.

■ But, Little Rock is not such a district. And its right to organize and arrange its schools and assign students thereto is qualified by its constitutional duty to integrate its schools. As far back as 1960, Judge Johnsen (then Chief Judge) speaking for the Court of Appeals in the Dollarway case stated in rather plain terms that an Arkansas school district's duty to eliminate what he called "an existing system of imposed

1. In its latest opinion in the Dollarway case, Cato v. Parham, E.D.Ark., 293 F. Supp. 1375, the Court noted the opposition of the Negro community in Little Rock to the closing of Horace Mann High School.

segregation" cannot be made to yield to purely educational considerations in assigning students to schools. Dove v. Parham, 8 Cir., 282 F.2d 256, at 258–259. We have come a long way since that opinion was written.

This Court is not prepared to say at this time whether or to what extent under more recent ruling decisions affirmative integration for its own sake and irrespective of side effects overrides generally accepted educational concepts. Perhaps it overrides them entirely; perhaps it does not. But, the Court cannot overlook the fact that the District is now required to "disestablish" its existing dual system of racially identifiable junior high schools and is concerned primarily with whether the proposed plan will do so. Hence, the Court turns again to enrollment projections and percentages as it has done before in this case and in other cases.

According to the Board's projections, 6131 students of both races will be enrolled in the seventh, eighth, and ninth grades in September 1971.

Of those students, 2256 (37 percent) are black. Of the students living in the Booker-Mann attendance area 878 (91.7 percent) will be black, although it may be said that a substantial number of those students will have received an integrated education in the first six grades by virtue of attendance at the Booker Elementary School. However progressive or enriched the District's program for students living east of the Broadway-Arch Street line may be, in the last analysis it will be a program for black students in a largely black school complex.

As to the schools west of the line, the picture is a good deal brighter although the Court does not know whether it is bright enough. There will be a substantial majority of white students in all of those schools, and the percentage of Negroes in the respective schools (assuming that they can get there) will range from a low of 25 percent at Henderson to a high of 28 percent at Southwest.

The Board's plan clearly will not achieve racial balance in all of the junior high schools of the District. If racial balance is required in all of those schools, including Booker-Mann, it is and always has been evident to the Court that the only way in which that balance can be achieved is by the massive busing or cross busing of students back and forth at enormous expense to the District and at great inconvenience to the students concerned. The present plan will entail very considerable transportation, but much more will be required to achieve complete racial balance in all of the schools.

As far as cost to the District is concerned, it may be that the District is not required to provide any transportation. It may simply assign students to schools and leave it to the students and their families to work out means whereby the children can get to school. It is obvious what class of students would suffer more from such an approach.

If the Constitution requires complete racial balance in all schools, that is the end of the matter. It may be, however, that less drastic measures will suffice. It is still possible that the appellate courts will permit the assignment of students to schools that are reasonably accessible to their homes provided that students have a free right to transfer from majority to minority situations. The Court does not know.

Before concluding these comments the Court desires to mention the fact that the plan for the junior high schools refers to remodeling now going on at Pulaski Heights Junior High School and proposed construction at Henderson. Counsel for plaintiffs and intervenors have expressed the fear that such remodeling and construction will hamper rather than expedite integration.

■ The Court recognizes that a school district cannot constitutionally engage in construction that tends to perpetuate segregation or to delay integration. Kelley v. Altheimer, Ark. Public School District No. 22, 8 Cir., 378 F.2d

483, 494–497. But, the Court also is aware from its later experience in the Altheimer case that a construction program even though originally intended to preserve segregation may turn out ultimately to be a means for the expediting of integration; that very thing happened at Altheimer.

The remodeling of the Pulaski Heights Junior High School is approaching completion, and it is going to have to be completed if the school is to be used efficiently; nor does the Court see that it will affect integration adversely in any way.

The principal complaint of plaintiffs is directed at the improvements to be made at Henderson. Counsel argue that the making of those improvements will hasten the migration of white parents of junior high school children from the eastern and central portions of the City to the western portion which would tend to resegregate the schools in the former portions.

While the Board has money available for the Henderson construction, the work has not been advertised for bids, and the Court does not know when the Board plans to commence the construction. Construction might begin at some time during the approaching winter or next spring, or the work might not be commenced until some later time.

The Court is not persuaded that the fear of counsel is so well grounded as to move the Court to enjoin the construction of the improvements at Henderson at this time, assuming that the Court has jurisdiction to do so in the present posture of the case, or in terms to disapprove the construction in the course of evaluating the junior high school plan. The Court thinks, though, that the Board would be well advised not to commence work without the prior approval of this Court or of the Court of Appeals.

It is now necessary for the Court to determine what the precise terms of its order will be. The order will, as indicated, approve the junior high school plan for the current school year. As to future years, the Court in view of the present unsettled state of the law is not willing to disapprove the plan categorically and thereby imply that the Court is or may be of the opinion that absolute and total integration of all schools is constitutionally required regardless of all counter considerations.

On the other hand, if the Court approves the plan for the junior high schools with respect to 1971–72 and later years it may put the Board in no better position than it is with respect to those schools in the event the Court of Appeals should disapprove the closing of Horace Mann as a high school. The Court recognizes that such an approach may put the Board in a difficult position with respect to the junior high schools should appellate decision in this case be long delayed. But, the Board is already in a difficult position. Further, there is no reason to believe that the decision of the Court of Appeals will not be forthcoming at an early date and that Court always has jurisdiction to grant appropriate interim relief should such turn out to be necessary. In the circumstances the Court thinks that it should simply refuse to approve at this time the plan as it applies to years after 1970–71.

■ It is, therefore, considered, ordered, and adjudged that the plan of the defendants herein for the operation of the Little Rock Public School District's junior high schools be, and the same hereby is, approved for the 1970–71 school year only. The defendants' plan for the operation of those schools in later years will not be, and is not, approved at this time.