**Othello CROSS, Plaintiff,**

v.

**The BOARD OF EDUCATION OF the DOLLARWAY, ARKANSAS SCHOOL DISTRICT, et al., Defendants.**

**No. PB–74–C–205.**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

June 17, 1975.

John W. Walker, Little Rock, Ark., for plaintiff.

Robert V. Light, Little Rock, Ark., for defendants.

MEMORANDUM OPINION

HENLEY, Circuit Judge Sitting By Designation.

This civil rights action is the latest in a series of cases extending back to 1959 wherein efforts have been made to desegregate the students and faculty of

the Dollarway School District.[1] The plaintiff, a black man named Othello Cross, claims to have been victimized by racial discrimination practiced by the District in the hiring, compensation, and promotion of its employees in violation of 42 U.S.C. §§ 1981, 1983, and 2000e–2, and he asks this court to grant him the job of head high school football coach and athletic director at the Dollarway School and for back pay for the 1964 through 1974 school years. After consideration of the evidence presented and the parties' briefs, the court finds that (1) the defendants refused to promote the plaintiff to the position of head high school football coach and athletic director in 1969 and 1973 solely because of his race; (2) plaintiff is entitled to back pay for the 1969 through 1974 school years; and (3) the defendants must either promote the plaintiff to the position of head football coach and athletic director or compensate plaintiff at a salary equal to that which he would receive if he were so promoted.

In 1968 this court ordered unitization of the dual school facilities which had been maintained staunchly by the District since the Brown v. Board of Education decisions in 1954 and 1955. Prior to unitization in 1969, the Dollarway District operated three segregated facilities—the Townsend Park School, the Dollarway School, and the Pinecrest Elementary School. The all-black Townsend Park School was the primary institution for the District's approximately 1,700 black elementary and high school students while the Dollarway School, which was less than 5% black, enrolled over 1,200 elementary and secondary school students. The Pinecrest Elementary School's 300 students were all white. After unitization, Dollarway School became the only high school in the District and Townsend Park was converted to a junior high facility.

Since unitization, the Board has maintained a policy of replacing white faculty members with whites and blacks with blacks. Plaintiff's exhibit #3, which shows the racial composition of the "top" salaried positions in the Dollarway system from 1968 to 1974, verifies this proposition. Before unitization, the thirty-two top positions were occupied by twenty whites and twelve blacks; after unitization in 1969 twelve of these positions were eliminated, and of the twenty remaining positions fifteen were occupied by whites and five by blacks. Since 1970 this number has remained at fourteen whites and six blacks except for 1971 when the number was fourteen and five, respectively. With few exceptions, the exhibit demonstrates that blacks were replaced with blacks and whites with whites, and, of course, this procedure guarantees that whites will occupy a majority of the better positions. All members of the Dollarway Board of Education are white,[2] and the District Superintendent, Mr. James W. Matthews, maintains an all-white staff in his office. Mr. Matthews has hired fourteen new teachers since 1969, and all but one have been white.

Unitization entailed elimination of some of the overlapping faculty posi-

1. On August 9, 1973, the court granted Mr. Cross leave to intervene in the long pending action of Cato v. Parham, 293 F.Supp. 1375 (E.D.Ark.1968), aff'd 403 F.2d 12 (8th Cir. 1968); 316 F.Supp. 678 (E.D.Ark.1970), and on June 6, 1974 he filed a separate complaint alleging the same facts as those contained in his motion to intervene. Defendants filed a motion to dismiss the complaint and a hearing was held on this issue on September 5 and 6, 1974. The motion subsequently was denied, and the defendants filed their answer on October 21, 1974. Both

sides have agreed by letter to submit the case for a final determination on the merits without a further hearing.

Other cases involving the Dollarway School District are styled Dove v. Parham, 176 F. Supp. 242 (E.D.Ark.1959); 181 F.Supp. 504 (E.D.Ark.1960); 183 F.Supp. 389 (E.D. Ark.1960); 194 F.Supp. 112 (E.D.Ark. 1961); 196 F.Supp. 944 (E.D.Ark.1961).

2. For a part of the period from 1969 to date there has been a single black member of the Board.

tions created by the District's prior maintenance of dual facilities—e. g., head high school football coach—and as a result, Mr. Cross was demoted from the position of head high school football coach at Townsend Park to assistant high school football coach at the integrated Dollarway School. However, Mr. Cross suffered no cut in salary. Mr. Eugene Fletcher, a white man and head football and track coach and athletic director at the old segregated Dollarway School, resigned these positions with unitization in 1969 and became Junior High School Principal. His replacement, a white man named Chester Key, resigned in 1973, and on direction of the Board of Education the District Superintendent refused to consider Mr. Cross' application for the vacancy and instead hired the head football coach at the Lonoke, Arkansas High School—a white man named Carl Owens—to be the new head football coach and athletic director. Shortly thereafter, Mr. Cross instituted legal proceedings in this court.

The gravamen of the plaintiff's complaint is that the District deviated from its long standing policy of promoting faculty from within the Dollarway system and instead hired a replacement in 1973 who was objectively less qualified than plaintiff to be head football coach and athletic director. While admitting that Mr. Cross is qualified "academically" to be head football coach and athletic director, the District contends that "dissension among the staff" forced the Board to look elsewhere in 1973 for a replacement for Mr. Key and that the replacement, Mr. Owens, is more qualified than Mr. Cross because he is more "enthusiastic" and "concerned." The plaintiff also contends that the District failed to make him head football coach and athletic director after unitization in 1969 because of his race and instead hired the less qualified assistant white coach. Finally, Mr. Cross alleges that the school board has steadfastly maintained from 1964 through 1974 a discriminatory pay scale in which blacks receive less pay for equal work. Mr. Cross asks for back pay for this ten year period but asserts no claims on behalf of any class.

At the hearing, the defendants did not attempt to explain their demotion of the plaintiff in 1969 and the simultaneous promotion of the white assistant coach. However, they vigorously defended their 1973 employment decision not to promote the plaintiff. Mr. Mathews testified that upon receiving notice of Mr. Key's resignation in June, 1973 the Board instructed Mr. Matthews to deviate from the District's normal policy of "promoting from within" and to "go outside the system" to find a new head football coach and athletic director despite Mr. Key's recommendation that Mr. Cross be promoted. Although the superintendent normally does not take employment decisions to the Board, Mr. Matthews did so in this instance because the job was so important to the community and because he feared that appointment of a black coach would provoke adverse community reaction and scare off white athletes. Mr. Cross and other members of the Dollarway coaching staff never received notice of the Board's decision, and Mr. Cross' June 25, 1973 application for the job was never acted upon officially by either the Board or by Mr. Matthews.

The Board has never established any objective written criteria to be followed in employment decisions, and Mr. Matthews testified that in judging an applicant's qualifications to be head football coach he considered educational background, experience, enthusiasm, "ability to get along with people," and knowledge of the game of football. According to Mr. Matthews and a Mr. Marvin McDaniel, a Board member for thirteen years, "friction within the coaching staff" caused the Board in 1973 to decide to go outside the system to find a new coach and athletic director. Mr. McDaniel, however, could not provide any specific examples of this dissension although he did testify that Mr. Cross

rarely attended Booster Club meetings and generally seemed unenthusiastic about extracurricular activities which he was not under contract to attend. Mr. Matthews stated that Cross frequently absented himself from his junior high school science class, and subsequently he was transferred to a senior high school teaching assignment where his class attendance improved. Despite these problems, the Board promoted Mr. Cross to head track coach in 1972 in addition to his football coaching duties.

■ Subjective criteria carry little weight in deciding whether a school district has discriminated in the hiring, compensation, and promotion of teachers where there has been a history of racial segregation since *Brown I*, and so this court will give little consideration to whether Mr. Cross was less "enthusiastic" than Mr. Owens or less inclined "to get along with people." Moore v. Board of Education of Chidester School Dist. No. 59, 448 F.2d 709 (8th Cir. 1971). A comparison of the objective qualifications in August, 1973 of Cross and Owens indicates that Mr. Owens was more qualified "academically" while Mr. Cross was by far the more experienced teacher and coach and possessed a better won-loss record. After receiving his Bachelor of Arts degree from Arkansas A. M. & N. Mr. Cross completed twenty-seven graduate hours, including study at Howard University. From 1962 to 1969 he was head football coach and high school science teacher at the old segregated Townsend Park School where his teams compiled a record of 68 wins and 14 losses. He also performed a number of administrative duties similar to those performed by an athletic director although his contract with the District did not so require. Mr. Owens, age 31, received a Bachelor of Arts degree in 1966 from College of the Ozarks and a masters degree in 1969 from State College of Arkansas. Before coming to Dollarway, he had been assistant high school football coach at Wynne and Osceola, Arkansas from 1966 to 1970, and head football coach at Lonoke, Arkansas from 1970 to 1973 where his teams compiled a 7 win, 22 loss and 1 tied record. Owens also had seven years of teaching experience. The old Townsend Park School was rated by the Arkansas Athletic Association as a class AA school while the Lonoke High School was given a lower A rating during Mr. Owens' tenure.

■ The record shows that Cross was more qualified objectively than Mr. Key in 1969 to be head high school football coach and athletic director. Mr. Key had completed only a few hours of graduate study, and when promoted in 1969 he possessed no previous head coaching experience and had been an assistant coach in the District for only one year.

Mr. Owens and Mr. Cross were roughly equally qualified in 1973 for the job of head football coach and athletic director, but the court believes that Mr. Cross made out a prima facie case of racial discrimination and that the defendants failed to produce any evidence which would rebut this inference. In short, the defendants would have hired Mr. Cross as head football coach and athletic director in 1973 if Mr. Cross had been a white man; instead, they rejected Cross' application to fill the vacancy solely because of his race. The following facts buttress this conclusion: (1) the Board's deviation from its policy of promoting within the system; (2) testimony by Matthews and McDaniel that racial considerations militated against hiring Mr. Cross in 1973; (3) the questionable decision not to hire Mr. Cross in 1969 as head football coach and athletic director; (4) the Board's apparent policy to replace whites with whites and blacks with blacks; (5) failure since 1969 to hire a number of blacks even roughly proportional to the number of black students in the Dollarway system, Jackson v. Wheatley School Dist., 430 F.2d 1359 (8th Cir. 1970); (6) failure to develop an objective nonracial set of criteria for the recruitment, hiring, promotion, and compensation of

staff and other personnel, Moore v. Board of Education of Chidester School Dist., *supra*; and (7) the long history of opposition to integration in the Dollarway system.

■ Mr. Cross also has shown by a preponderance of the evidence that racial considerations led to his demotion in 1969 from head football coach at Townsend Park to assistant football coach at the integrated Dollarway facility. Unitization eliminated Mr. Cross' job as head high school football coach at Townsend Park, and when a vacancy in the remaining head high school coaching position occurred shortly thereafter and at least partially as a result of unitization, the District had a duty to compare the qualifications of Mr. Cross and Mr. Key in filling the vacancy. Smith v. Board of Education of Morrilton School Dist., 365 F.2d 770 (8th Cir. 1966). *Smith* stands for the proposition that the Fourteenth Amendment requires comparative evaluation of the applications by present faculty members for a vacancy created by desegregation efforts of a school district. While "teaching is an art . . . that . . . does not depend upon knowledge, experience, formal training and classroom conduct alone," (*id.* at 781), subjective criteria carry little weight in judging the legality of employment decisions where there has been a long history of racial segregation by the school district. Moore v. Board of Education, *supra*. Given the unique circumstances of this case, plaintiff established a prima facie case of racial discrimination by showing that he was objectively more qualified than Mr. Key in 1969, and the defendants failed to rebut this showing with any evidence that Mr. Key was the better man for the job. These unique circumstances are as follows: (1) as a result of unitization, blacks bore a disproportionate loss of jobs in the "top" salaried positions in the District; and (2) the District has never established any objective written criteria to be used in judging applicants to fill teaching vacancies. Thus, the in-escapable conclusion is that race was a consideration in the District's 1969 decision to demote Mr. Cross and promote Mr. Key.

■ Finally, plaintiff claims that the Board has maintained a discriminatory pay scale from 1964 to the present in which blacks receive less pay for equal work. The record reflects that from 1964 until unitization Mr. Cross received less pay than his counterpart at the Dollarway School. However, Mr. Cross never signed a contract designating him as "athletic director" at the Townsend Park School, and so this disparity in compensation can be explained by the additional athletic director duties performed by the football coach at Dollarway School. Mr. Cross may have performed many tasks at Townsend Park comparable to the usual duties of an athletic director, but without contracting for performance of such duties he cannot claim entitlement to back pay.

The plaintiff submitted records which he contended were indicative of systematic salary discrimination by the defendants and so inferentially showing an intent to discriminate against Mr. Cross. Since plaintiff's lower salary from 1964 to unitization may be explained by legitimate non-racial considerations, these records have minimal relevance to Mr. Cross' individual claim.

Accordingly, it is the judgment of this court that the plaintiff, Othello Cross, is entitled to back pay for the school years 1969–1974 in the sum of $4,717.00, said sum representing the difference between compensation actually paid Mr. Cross and the salary of the head high school football coach during this period. Since the trial of this case the 1974–75 school year has ended. Mr. Cross is entitled to recover also the sum of $800.00 for that year. The defendants will be directed to promote Mr. Cross to the position of head high school football coach and athletic director or, in the alternative, to compensate Mr. Cross as long as he remains employed by the District at a salary equal to that which he would receive

if he were so promoted. The plaintiff is also entitled to an award of attorney's fees and the costs of this action. 42 U. S.C. § 2000e–5(k).

The court will fix 20% of the amount due Mr. Cross as an appropriate fee to be recovered from the defendants. This is not to say that counsel may not be entitled to a larger fee, but the remainder, if any, is not to be charged to the defendants.

An appropriate order will be entered.