Brenda Elaine BROWN et al.

v.

**COUNTY SCHOOL BOARD OF FREDER-
ICK COUNTY, VIRGINIA, et al.**

Civ. A. No. 642.

United States District Court
W. D. Virginia,
Harrisonburg Division.

June 15, 1964.

S. W. Tucker, Tucker & Marsh, Richmond, Va., Otto L. Tucker, Alexandria, Va., for plaintiffs.

A. B. Scott, Peyton, Beverley, Scott & Randolph, Richmond, Va., Joseph A. Massie, Jr., Massie, Snarr & Monahan, Winchester, Va., for defendants.

MICHIE, District Judge.

This suit was instituted by Brenda Elaine Brown, an infant, and other infants by their father as next friend and by their father also as an individual plaintiff against the County School Board of Frederick County, Virginia, and the Division Superintendent of Schools of Frederick County as well as the State Pupil Placement Board.

While the cause was pending the Pupil Placement Board assigned all of the infant plaintiffs to the schools to which they desired to go so the case appeared moot to this court and was ordered stricken from the docket. This order was appealed and the Court of Appeals, in a brief per curiam opinion decided January 27, 1964, 4 Cir., 327 F.2d 655 (1963), held that, since the record disclosed the existence of a bi-racial system of schools, the matter should be remanded for further consideration of plaintiffs' prayers for an injunction and counsel fees in the light of the opinions of the Fourth Circuit Court of Appeals in Bradley v. School Board of the City of Richmond, 4 Cir., 317 F.2d 429, and Bell v. School Board of Powhatan County, Virginia, 4 Cir., 321 F.2d 494 (1963).

Subsequent to the handing down of the per curiam opinion, a further hearing was held in this court and evidence taken.

The injunction was previously denied by this court on the theory that the ques-

tion had become moot by the admission of all of the infant plaintiffs to the schools to which they desired to go. I can only deduce from the brief opinion of the Court of Appeals that that Court considered that the father of the original infant plaintiffs, who was himself named as a plaintiff, could continue to conduct the suit on behalf of other children who might be similarly situated.

 Turning first to the question of an injunction, it appears from evidence taken subsequent to the handing down of the opinion by the Court of Appeals that the County is still making initial assignments on a racial basis though transfers have been freely granted upon request. The resolution filed with this court by the defendant School Board makes no provision for a termination of this policy.

In a very recent case, Buckner v. County School Board of Greene County, 332 F.2d 452, decided May 25, 1964, the Fourth Circuit Court of Appeals has expressly stated that, "If, as alleged in the complaint, students were initially being assigned to schools in a racially discriminatory manner, 'the School Board is actively engaged in perpetuating segregation.'" In the light of this opinion, I feel compelled to enter an injunction against any racial discrimination whatsoever on the part of the defendants in this case. However, as was done in Bell v. School Board of Powhatan County, supra, I will provide in the injunction order that the School Board may within 60 days file with the court a plan to provide for immediate steps to terminate discriminatory practices with respect to the operation of the public schools and, if a plan is submitted and approved, the injunction will be suspended and the operation of the schools shall thereafter be in accordance with the plan.

 The Court of Appeals in its brief per curiam opinion in this case suggested that counsel fees be considered in the light of the court's opinion in Bell v. School Board of Powhatan County, supra. In that case the court said:

"Finally, we consider the District Court's denial of counsel fees to the plaintiffs. The general rule is that the award of counsel fees lies within the sound discretion of the trial court but, like other exercises of judicial discretion, it is subject to review. The matter must be judged in the perspective of all the surrounding circumstances. Local 149, U. A. W. v. American Brake Shoe Co., 298 F.2d 212 (4th Cir.), cert. denied, 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed. 2d 276 (1962). Here we must take into account the long continued pattern of evasion and obstruction which included not only the defendants' unyielding refusal to take any initiative, thus casting a heavy burden on the children and their parents, but their interposing a variety of administrative obstacles to thwart the valid wishes of the plaintiffs for a desegregated education. To put it plainly, such tactics would in any other context be instantly recognized as discreditable. The equitable remedy would be far from complete, and justice would not be attained, if reasonable counsel fees were not awarded in a case so extreme."

The instant case bears no resemblance to that described in the foregoing quotation. This suit was filed on September 18, 1962. Shortly after the suit was filed, a conference between the court and attorneys, at which some evidence was also taken, was held and on October 16 the court wrote attorneys a letter in which the following statement was made:

"When we met here two weeks ago we had a discussion as a result of which I hoped that the parties would be able to agree upon a disposition of this matter without extended litigation. I do not know whether any progress has been made along that line."

On October 17 Mr. Massie, counsel for the School Board, wrote Mr. Tucker, counsel for the complainants, that the

matter would probably be moot by the beginning of the next school year and that the appropriate authorities in Frederick County were open for a discussion of the matter with a view to a solution of the problems raised by the suit. He suggested that Mr. Tucker come to Winchester and meet with the School Board. On November 20 I wrote counsel to the effect that I had had no reply to my letter of October 16 and inquired what progress was being made towards a possible settlement. On November 21 Mr. Massie wrote to me, again indicating the willingness of the authorities to discuss the matter with Mr. Tucker, a copy of this letter of course going to Mr. Tucker. On December 17 Mr. Tucker wrote that he would be glad to meet with the School Board in January of 1963. Mr. Massie failed to answer this letter, later giving as a reason the fact that the School Board did not meet in January.

Mr. Massie apparently wrote Mr. Tucker again on February 21, 1963 but I do not have a copy of that letter. Not having heard anything further from the matter, I again raised the question of the status of the case by letter dated April 18, 1963 and Mr. Massie replied that he had never had an answer to his letter of February 21 to Mr. Tucker. I then wrote to Mr. Massie, with copy to Mr. Tucker, that, unless I heard from Mr. Tucker within the next ten days, I would dismiss the case for want of prosecution. I got a prompt reply from Mr. Tucker which asked that a date for trial be set, apparently abandoning any idea of an amicable settlement—which perhaps was understandable in view of Mr. Tucker's failure to respond to suggestions for a conference made throughout the preceding six months. Nevertheless, still trying, Mr. Massie wrote again to Mr. Tucker on April 29 to tell him that the School Board was meeting on May 7 and also May 20 and that they would be delighted to talk the situation over with him. Mr. Tucker, in a letter to me of May 1, stated that at the time he asked me for a trial date he had suggested to Mr. Massie that he was still ready to attempt to avoid trial

by negotiation. But Mr. Tucker did not accept Mr. Massie's invitation to attend either of the May meetings of the School Board. On May 6, 1963 I wrote Mr. Tucker, reviewing the correspondence and his various failures to reply, and stating as follows:

"As I understand from Mr. Massie and Mr. Scott there appears to be no real controversy here. As far as I can see all that needs to be done is for you and Mr. Massie to get together on a program which you can agree upon and submit it to me for approval. I would enter a decree thereon which would have the same effect as if we had gone through the motions of bringing in witnesses when there is no real controversy.

"Of course if you have any ground for feeling that there would be a real controversy the situation might be altered. But so far none has been suggested. And the legal situation seems to me so clear that I do not apprehend that any real controversy exists.

"Under the circumstances I am not disposed to set a date for trial and have witnesses come to Harrisonburg on a matter which should be settled in a few minutes of discussion between you and Mr. Massie.

"I suggest once more that, either by correspondence or by a personal interview, you endeavor to settle this matter."

On May 8 I wrote to Mr. Massie that I had had no reply from Mr. Tucker but I did feel very strongly that the two of them should get together to discuss the matter.

On May 27 Mr. Tucker wrote that he had concluded that no further hearing in the matter would be necessary. Shortly thereafter, the Pupil Placement Board granted the transfers requested by the children involved in the suit. Shortly thereafter this court entered the order which was subsequently appealed from. That order struck the cause from the docket but expressly provided that it

could be reinstated on the docket without payment of any filing fee in the event the plaintiffs or anyone who would have had a right to intervene in the cause should file a petition for reinstatement and/or intervention. No such petition has been filed.

The situation here is therefore clearly distinguishable from that in Bell v. School Board of Powhatan County, Virginia. There is here no "long continued pattern of evasion and obstruction" nor a refusal to take the initiative. On the contrary, the County has consistently understood that segregation cannot be maintained and has consistently pleaded for a conference at which a program could be agreed upon. It is the belief of the court that much of this litigation could have been avoided had counsel for the plaintiffs been willing to sit down and discuss the situation with counsel for the defendants. There has been here no long continued pattern of evasion and obstruction and the interposition of a variety of administrative obstacles such as was found in the Powhatan County case and was referred to by the Court of Appeals as a basis for awarding counsel fees. Consequently, I find in this case that no counsel fees should be awarded.

An order will be entered accordingly.