Carlotta Mozelle **BREWER** and Demetria Yvonne Brewer, infants by Oner Brewer, their father and next friend, et al., Appellants and Cross-Appellees,

v.

The **SCHOOL BOARD OF** the **CITY OF NORFOLK, VIRGINIA,** et al., Appellees, and

David E. Allgood, Infant, etc., et al., Appellees and Cross-Appellants.

Nos. 71-1900 and 71-1901.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 5, 1972.

Decided March 7, 1972.

Certiorari Denied May 15, 1972.
See 92 S.Ct. 1778.

Winter, Circuit Judge, concurred specially and filed opinion.

Henry L. Marsh, III, Richmond, Va. (S. W. Tucker, James W. Benton, Jr., Richmond, Va., Victor J. Ashe, Norfolk, Va., Jack Greenberg, James M. Nabrit, III, and Norman J. Chachkin, New York City, on brief), for Carlotta Mozelle Brewer and others.

Marshall T. Bohannon, Jr., Norfolk, Va. (Herbert & Bohannon, Norfolk, Va., on brief), for David E. Allgood and others.

Allan G. Donn, Norfolk, Va. (Toy D. Savage, Jr., Willcox, Savage, Lawrence, Dickson, & Spindle, Norfolk, Va., and Leonard H. Davis, City Atty., on brief), for School Board of City of Norfolk and others.

DONALD RUSSELL, Circuit Judge:

As a result of the decision of the Supreme Court in Swann [1] and Davis,[2] this Court vacated the judgments of the District Court in this and four other school desegregation cases and remanded the proceedings to the District Courts having jurisdiction over such cases, with instructions "to receive from the respective school boards new plans (of desegregation) which will (would) give effect to Swann and Davis", employing in the development of such plans "the use of all techniques for desegregation, including pairing or grouping of schools, noncontiguous attendance zones, restructuring of grade levels, and the transportation of pupils." Adams v. School District Number 5, Orangeburg Co., S. C. (4th Cir. 1971) 444 F.2d 99, 100, 101.

Upon remand, the school board in this case filed a revised plan of desegregation. Under the restructuring of the schools within the district proposed in such plan, including the pairing and clustering of a number of its schools, large numbers of students were to be assigned to schools beyond normal walking distance from their homes. Objections were entered to this plan by the plaintiffs-appellants, as well as by certain intervenors-cross-appellants; and several hearings were had. After certain changes and modifications had been made, the District Court approved the plan of desegregation and from this approval the plaintiffs and intervenors have appealed.

▆▆▆ The intervenors object that the plan seeks, contrary, as they assert, to the mandate of Swann, to balance racially the schools of the defendant district. It is permissible under Swann to use racial percentages as a "starting point" for a plan of desegregation. Of course, as Swann makes clear (402 U.S.

23–25, 91 S.Ct. 1267, 28 L.Ed.2d 554), these percentages, at best, will be regarded as mere approximations, for, as the Court in Norwalk Core v. Norwalk Board of Education (2d Cir. 1970) 423 F.2d 121, at p. 122, said:

"The racial ingredients of schools cannot be prescribed with such certainty of a correct optimum result as might be found in a gourmet cook book specifying the proper portions for a de luxe casserole."

And this is all we construe the plan in this case to do. The intervenors, also, assert that the plan is unacceptable to a large segment of the patrons of the school system and is therefore unworkable. Such objection has been repeatedly disallowed.[3] The last claim raised by the intervenors is that, as a result of the plan, pupils are being subjected to unreasonable risks to their health and safety by the assignments without their neighborhood. This contention, too, is without merit. Even in the illustrations set forth by the intervenors in their brief, bus trips required of pupils under the plan generally fall within a range of thirty minutes each way. This is much less than the three-hour round trip condemned in Winston-Salem/Forsyth Bd. of Ed. v. Scott, 404 U.S. 1221, 1227, n. 1, 92 S.Ct. —— (Chief Justice Burger) and found unreasonable in Mims v. Duval County School Board (D.C.Fla.1971) 329 F.Supp. 123, 133. Nor is it substantially different from the extent of busing required in Swann, 402 U.S. at p. 30, 91 S.Ct. 1267, 28 L.Ed.2d 554.

▆▆▆ A number of the plaintiffs' objections to the plan, as raised in this appeal, are similarly inconsequential and may be dismissed. The allowance of the "rising seniors option", which the plaintiffs argue increased the black proportion in Booker T. Washington High

---

1. Swann v. Charlotte-Mecklenburg Board of Education (1971) 402 U.S. 1 and 43, 91 S.Ct. 1267 and 1284, 28 L.Ed.2d 554 and 586.

2. Davis v. Board of School Comm'rs of Mobile County (1971) 402 U.S. 33, 91 S.Ct. 1289, 28 L.Ed.2d 577.

3. See Watson v. Memphis (1963) 373 U.S. 526, 536–537, 83 S.Ct. 1314, 10 L.Ed. 2d 529.

School, and which permits rising seniors, if they so desire, to complete their final year at the school they attended the previous years, will only be effective during the current school year. Its effect on the racial composition of Booker T. Washington High School during 1971–72 has not been substantial. Taking into consideration the considerable changes already made in the assignment of pupils in this school system, we would not be disposed to interfere with this "senior option" plan in the midst of the current school year. Cf., The Supreme Court, 1970, Term, 85 Har.L.Rev. 3, 79, note 30. The school system is, also, moving expeditiously towards a proper racial balance in its teaching and administrative staffs. The plaintiffs do not seriously contend otherwise. Under these circumstances, we are inclined to agree with the conclusion of the District Court that judicial action in this connection does not appear presently required. Finally, the school district customarily files regularly with the Court reports of its progress in desegregation. The District Court found the reports as filed adequate and the plaintiffs have pointed to no specific areas in which these reports do not provide sufficient information to the Court. We shall not disturb the finding of the District Court in this regard.

The primary attack of the plaintiffs on the plan is directed at the failure to provide free bus transportation for those pupils of the District who live beyond normal walking distance from the school to which they are assigned. As previously observed, the plan contemplates the assignment of a substantial number of pupils to schools located beyond walking distance of their homes but provides no means of transportation for pupils so assigned. The plaintiffs assert that, under these circumstances, the maintenance by the School District

of a busing program for pupils who are not within walking distance of their assigned school is a necessary corollary to the assignment itself. They echo the comment of another Court, faced with a similar problem, that, it is "ridiculous to assign students to schools which they cannot reach". Davis v. Board of Education of North Little Rock, Ark. (D.C. Ark.1971) 328 F.Supp. 1197, 1203. While conceding that the School District has not heretofore operated a bus system or provided free busing,[4] they would find no more merit in the argument that this justifies failure to provide transportation than in the argument in the earlier stages of this proceeding against a duty to assign pupils outside their neighborhood for purposes of eliminating the vestiges of segregation. They say the two requirements—to assign and to provide transportation—go hand-in-hand—and one without the other is useless. They dismiss as unacceptable the suggestion that the pupils should avail themselves at their own expense of the facilities of the local private bus transportation system to reach their assigned school. They point out that, under the present rates, these pupils would be required to pay $45 per school year for transportation and, under a set of proposed rates which will soon become effective, $63 per year. A substantial number of the students reassigned come from families for whom these expenditures could be an unreasonable, if not an intolerable, burden. It was largely to safeguard the constitutional rights of this group of students that the plan of desegregation was promulgated. The plaintiffs urge that if the Court, after providing for their reassignment, takes no steps to make available to them, without cost, busing to the school to which they are assigned, the whole plan of desegregation becomes a futile gesture and will represent for the disadvantaged child, intended to be protected thereby

---

4. The same situation prevailed in the school district whose plan of desegregation was reviewed in Davis v. Board of Education of North Little Rock, Ark., *supra.*

Cf., however, Norwalk Core v. Norwalk Board of Education (D.C.Conn.1969) 298 F.Supp. 213, at p. 224, aff. 423 F.2d 121.

in his constitutional rights, a cruel hoax. This argument persuades; it also accords with our understanding of *Swann* and *Davis*, both of which recognized and enforced "the district court's equity power to require transportation whenever and wherever necessary to disestablish a dual school system."[5]

It is regrettable that the requirement that the School District furnish busing for these students assigned beyond walking distance from their homes imposes substantial expense[6] upon the District which may force it to curtail some other worthwhile services, but, if reassignment is mandated constitutionally, it must be effective and meaningful and "more than a matter of words".[7] To repeat, the Court cannot compel the student to attend a distant school and then fail to provide him with the means to reach that school.

The school district has indicated that if the District is required to operate a bus system for the transportation of its pupils, the loss of revenue thereby occasioned to the local private transportation system will render such system unprofitable and lead to its discontinuance, with resulting inconvenience to the entire community. The local transportation system, on the other hand, cannot be, as it were, subsidized at the inconvenience of, and in denial of the constitutional rights of, the students. It is possible, however, as we have already indicated, that the school district may find it both practical and economical to utilize the services of the local bus system in discharging its obligation to provide adequate transportation for pupils assigned to schools beyond walking distance from their homes.[8] Whether this is a practical solution is a matter that

5. United States v. Watson Chapel School District No. 24 (8th Cir. 1971) 446 F.2d 933, 937.

6. This is not to indicate that the expense of busing may never be so unreasonably burdensome as to warrant denial of the relief. What we conclude is that the cost of busing in this case is not so unreasonably burdensome. This we think is evident both from the findings of the District Court and from the record. The District Court found the cost of installing and operating a transportation system by the school district to be $3,600,000. Of this sum, however, approximately $3,000,000 represented capital outlays, covering purchases of buses and the acquisition and equipping of service yards. These expenditures are normally funded and are not considered an operating expense. The annual operating expense of the bus system for the school district was fixed at about $600,000, of which 47 per cent would be reimbursable by the State. It would seem reasonable to assume that an annual operating budget of $600,000 by the district (supplemented as it would be with State aid) would cover the operating costs of the system and provide adequately for normal amortization of the capital expenditures required for the purchase of buses and for the acquisition of service facilities. Such an expenditure from a school budget of over 35 million dollars would be in line with what was considered reasonable in *Swann*, where an increased annual operating expense of

$1,000,000, imposed on a total school budget of $66,000,000, was held reasonable. See 85 Har.L.Rev. 83, note 61. Of course, it might be less expensive for the district to make an arrangement with the local bus system. Legislation is now being proposed in the Virginia Legislature to provide State financial support for private bus firms that carry children to school. Richmond Times-Dispatch, Section B, p. 1, February 9, 1972. The use of the private bus system in this situation may be both a practical solution for the school's problem and a means of financial relief for the private bus system itself. The relative merits of the two possibilities, i. e., the operation of its own bus system or the utilization of the services of the existing private bus service—are, however, for the initial consideration of the trustees of the school district and the District Court.

7. See Bradley v. School Board of City of Richmond, Virginia (4th Cir. 1965) 345 F.2d 310, 323 (concurring and dissenting opinions of Judges Sobeloff and Bell), remanded, 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187.

8. Actually, the requirement that the school district provide free transportation, if complied with through some arrangement with the local bus system, may be the only means of preserving such system. See, Richmond Times-Dispatch, Section B, p. 1, February 9, 1971, cited in note 6.

may be considered by the District Court on remand. What is determined here is that the school district as a part of its plan of desegregation, must provide a practical method of affording *free* busing for students assigned to schools beyond normal walking distance of their homes; the mechanics of the method to be employed by the school district in discharge of this duty are for the District Court.

Finally, the plaintiffs ask that an allowance of attorney's fees be provided as a part of their taxable costs herein. In support, they cite Bradley v. School Board of Richmond, *supra*, 345 F.2d p. 321. The federal rule, oft repeated, is that "attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." Fleischmann Corp. v. Maier Brewing (1967) 386 U.S. 714, 717, 87 S. Ct. 1404, 1407, 18 L.Ed.2d 475; Leary v. United States (4th Cir. 1919) 257 F. 246, 250, aff. 253 U.S. 94, 40 S.Ct. 446, 64 L.Ed. 798; McCraw v. United Ass'n of Journey. & App. of Plumbing, etc. (D.C.Tenn.1963) 216 F.Supp. 655, 664, aff. 6th Cir., 341 F.2d 705.[9] To this rule, courts of equity, as *Fleischmann* adds, have established certain limited historic exceptions. These exceptions are confined to those unique and special cases involving "compelling circumstances"[10] and " 'overriding considerations of justice' ",[11] where to deny allowance would result in "gross injustice".[12] The most frequent exception occurs where "a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself"[13] and is usually "one where through the complainant's efforts a fund is recovered in which others share."[14] The rationale for this exception is that it is only fair that he who creates or conserves a common fund or property should be reimbursed for his reasonable expenses, including attorney's fees, for protecting the common fund for others having a similar interest with him in that fund. Gibbs v. Blackwelder (4th Cir. 1965) 346 F.2d 943, 945; United States v. Jacobs (D.C.Md.1960) 187 F. Supp. 630, 634, aff. 298 F.2d 469.[15] The doctrine extends not only to cases in which a fund is either created or protected but also "where the effect of the suit is the same as though a fund were created." 6 Moore's Federal Practice, p. 1351; Sprague v. Ticonic Bank, *supra* (307 U.S. pp. 165–167, 59 S.Ct. 777, 83 L.Ed. 1184). The purpose of the award in such case, however, is not designed "as an additional recovery against the

---

9. In *Fleischmann* the Court observed that one of the reasons for the denial is that "the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for judicial administration." 386 U.S. 718, 87 S.Ct. 1407. See, also, Lee National Corp. v. Kansas City Southern Industries, Inc. (D.C.N.Y.1970) 50 F.R.D. 412, 414, for a statement of other reasons; and Monolith Portland Midwest Co. v. Kaiser Aluminum & C. Corp. (9th Cir. 1969) 407 F.2d 288, 293–294.

10. Bradley v. School Board of Richmond, *supra* (345 F.2d p. 321).

11. Fleischmann Corp. v. Maier Brewing, *supra*, 386 U.S. p. 718, 87 S.Ct. 1404, 18 L.Ed.2d 475; Siegel v. William E. Bookhultz & Sons, Inc. (1969), 136 U.S. App.D.C. 138, 419 F.2d 720, 722–723.

12. Monolith Portland Midwest Co. v. Kaiser Aluminum & C. Corp., *supra*, 407 F.2d at p. 294; see, also, Rolax v. Atlantic Coast Line R. Co. (4th Cir. 1951) 186 F.2d 473, 481.

13. Mills v. Electric Auto-Lite (1970) 396 U.S. 375, 392, 90 S.Ct. 616, 625, 24 L.Ed. 2d 593.

14. Sprague v. Ticonic Bank (1939) 307 U.S. 161, 166, 59 S.Ct. 777, 779, 83 L.Ed. 1184.

15. 3 Barron & Holtzoff, Federal Practice & Procedure (Rev.Ed.1958) p. 67, states the rationale thus:
    "The allowance of extraordinary costs 'as between solicitor and client' rests upon recognized equitable principles and may be made whenever the burden of litigation assumed by the prevailing party substantially benefits others who should in equity contribute to the expense."

wrongdoers, but as a means of ordering compensation to counsel from the class benefited." Bangor & A. R. Co. v. Brotherhood of Loc. Fire. & Eng. (1971) 143 U.S.App.D.C. 90, 442 F.2d 812, 823. The other normal exception to the general rule is illustrated by those "exceptional cases" "where the behavior of a litigant has reflected a wilful and persistent 'defiance of the law' ",[16] or where "an unfounded action or defense is brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons." [17] This exception is inapplicable, however, "where litigation was pursued on a matter as to which prior decisions left a lingering doubt." [18] Whether the conduct of the party in maintaining his action or defense was in bad faith without any basis in law or fact and represented "obdurate obstinacy" is ordinarily a matter committed to the discretion of the District Judge, to be disturbed only "in the face of compelling circumstances". Bradley v. School Board of City of Richmond, Virginia, *supra* (345 F.2d p. 321); Williams v. Kimbrough (5th Cir. 1969) 415 F.2d 874, 875, cert. den. 396 U.S. 1061, 90 S. Ct. 753, 24 L.Ed.2d 755; Cappel v. Adams (5th Cir. 1970) 434 F.2d 1278, 1279–1280; Simler v. Conner (10th Cir. 1965) 352 F.2d 138, 140–141, cert. den. 383 U.S. 928, 86 S.Ct. 931, 15 L.Ed.2d 846; Lucerne Investment Company v. Estate Belvedere, Inc. (3d Cir. 1969) 411 F.2d 1205, 1207.

This Court was the first Circuit to approve the grant of attorney's fees in school desegregation cases. Bell v. School Board of Powhatan County, Virginia (4th Cir. 1963) 321 F.2d 494, 500,[19] and Bradley v. School Board of City of Richmond, Virginia, *supra*. In so doing, we laid down the rule that such award was warranted under the exception that permitted such allowance where an unfounded action is brought or maintained in bad faith; specifically, we held that the right was limited to "the extraordinary case" and was "appropriate only when it is found that the bringing of the action should have been unnecessary and was compelled by the school board's unreasonable, obdurate obstinacy",[20] or persistent defiance of law.[21] This doctrine, thus enunciated by this Court, has been uniformly followed in the other Circuits where an award has been considered; and allowances have been made only where there has been a finding of "unreasonable, obdurate obstinacy" or persistent "defiance of law". Accordingly, in Felder v. Harnett County Board of Education (4th Cir. 1969) 409 F.2d 1070, 1075; Kemp v. Beasley (8th Cir. 1965) 352 F.2d 14, 23; Williams v. Kimbrough (D.C.La.1969) 295 F.Supp. 578, 587, aff. 5th Cir., 415 F.2d 874, cert. den. 396 U.S. 1061, 90 S. Ct. 753, 24 L.Ed.2d 755; Rogers v. Paul (D.C.Ark.1964) 232 F.Supp. 833, 843, aff. 8th Cir., 345 F.2d 117, remanded on other grounds, 382 U.S. 198, 86 S.Ct 358, 15 L.Ed.2d 265; Stacy v. Williams (D.C.Miss. 3-Judge Court, 1970) 50 F. R.D. 52, 55, aff. 5th Cir., 446 F.2d 1366; Haining v. Roberts (D.C.Miss. 3-Judge Court, 1970) 320 F.Supp. 1054, 1063; Wright v. County School Board of Greensville County, Va. (D.C.Va.1966) 252 F.Supp. 378, 385, remanded on other

16. Kahan v. Rosenstiel (3d Cir. 1970) 424 F.2d 161, 167, cert. den. Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290.

17. 6 Moore's Federal Practice, *supra*, p. 1352; Newman v. Piggie Park Enterprises (1968) 390 U.S. 400, 402, note 4, 88 S.Ct. 964, 19 L.Ed.2d 1263; Undersea Eng. & Const. Co. v. International Tel. & Tel. Corp. (9th Cir. 1970) 429 F.2d 543, 545; Kinnear-Weed Corp. v. Humble Oil & Refining Co. (5th Cir. 1971) 441 F.2d 631, 636–637; Note, 8 L.Ed.2d 912.

18. Bangor & A. R. Co. v. Brotherhood of Loc. Fire. & Eng., *supra*, 442 F.2d at p. 824; Local No. 149 I. U., U.A., A. & A.I.W. v. American Brake Shoe Co. (4th Cir. 1962) 298 F.2d 212, 216, cert. den. 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed. 2d 276.

19. Bell is favorably commented on in 77 Har.L.Rev. 1135 (1964).

20. 345 F.2d at p. 321.

21. 321 F.2d at p. 500.

grounds, Wright v. Council of the City of Emporia, 4th Cir., 442 F.2d 570; Brown v. County School Board of Frederick County, Va. (D.C.Va.1964) 234 F. Supp. 808, 811, remanded on other grounds, 4th Cir., 346 F.2d 22; Betts v. County School Board of Halifax County, Virginia (D.C.Va.1967) 269 F.Supp. 593, 604, and Franklin v. County School Board of Giles County (D.C.Va.1965) 242 F.Supp. 371, 377–378, rev. on other grounds, 4th Cir., 360 F.2d 325, the Court, applying *Bell* and *Bradley*, found that the action of the school boards did not amount to "unreasonable, obdurate obstinacy" or persistent "defiance of law" and denied attorney's fees.[22] On the other hand, again applying the rule enunciated in *Bell* and *Bradley*, the following decisions found either a "long continued pattern of evasion and ob-struction" as found in *Bell* or "unreasonable, obdurate obstinacy" as found in *Bradley*, and, based on such finding, made an award of attorney's fees: Nesbit v. Statesville City Board of Education (4th Cir. 1969) 418 F.2d 1040, 1043; Brown v. County School Board of Frederick County, Virginia (4th Cir. 1964) 327 F.2d 655 (remanded for consideration of allowance of attorney's fees in light of *Bradley* and *Bell*); Griffin v. Board of Supervisors of Prince Edward County (4th Cir. 1964) 339 F. 2d 486, 493 (where action was "taken to evade and defeat" the mandate of the court); Clark v. Board of Education of Little Rock School District (8th Cir. 1966) 369 F.2d 661, 670–671 and 449 F.2d 493, 499 (1971) (where the Court found in earlier case "obstinate, adamant, and open resistance to the

---

22. These cases were summarized in Haining v. Roberts, *supra*, 320 F.Supp. at p. 1063, thus:

"In the exercise of this equitable discretion (to allow attorney's fees) in civil rights cases, courts have generally denied the extraordinary relief of awarding attorney's fees absent a finding of 'unreasonable, obdurate obstinacy' on the part of the defendant."

It has been suggested that in certain civil rights cases, counsel really act as "private attorneys general" and, though there is no statutory provision for an award of counsel fees, such award is within the discretion of the Court. This was the basis of the decision in Lee v. Southern Home Sites Corp. (5th Cir. 1971) 444 F.2d 143, 147–148, where an award of counsel fees was authorized in a suit under Section 1982, 42 U.S.C. The reason for such ruling was that the right asserted by the complainant, though involving public policy, "under present judicial development, *depends entirely on private* enforcement." (Italics added.) A similar conclusion was reached in Miller v. Amusement Enterprises, Inc. (5th Cir. 1970) 426 F.2d 534, 537–538, where, in justifying an award in a Title II action of counsel fees to "private Attorneys General", the Court said that the "effectuation of this policy (of the Act) was primarily to be achieved through private suits by individuals. This flowed to a large extent from one of the great compromises in this and related legislation. The role of the Attorney General as the chief legal officer was markedly curtailed. True, he may bring suit, but only under the limiting circumstances of a 'pattern of practice' of discrimination. And the right of intervention, which is ordinarily accorded under liberalized circumstances, is confined to cases which the Attorney General certifies as being of 'general public importance' —the same added factor which can trigger a three-judge court suit." It is doubtful that the same reasoning would apply to school desegregation actions. To achieve school desegregation, the Attorney General, in any "meritorious" case, upon receipt of a written complaint, is authorized to sue on behalf of any person unable, in his opinion, "to bear the expense of the litigation". Section 2000c–6(b), 42 U.S.C. In addition, the Department of Health, Education and Welfare has a responsibility to see that every school receiving any federal assistance (and, for practical purposes, it may be assumed all do) is desegregated. Section 2000d, 42 U.S.C. These several provisions of the Civil Rights Act of 1964 mean, as one commentator has phrased it, that "Every federal agency is instructed to act to implement this pronouncement" against school discrimination and HEW specifically is directed "to assume responsibility for seeing that every school in the United States was (is) desegregated." Note, The Courts, HEW, and Southern School Desegregation, 77 Yale L.J. 321, at p. 322 (1967). But, cf., Bradley v. School Board of City of Richmond, Virginia (D.C.Va.1971) 53 F.R.D. 28, 41.

law" on the part of the school board); Hill v. Franklin County Board of Education (6th Cir. 1968) 390 F.2d 583, 585; Monroe v. Board of Commissioners, City of Jackson (D.C.Tenn.1965) 244 F.Supp. 353, 365–366, rev. on other grounds, 380 F.2d 955, and 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733; Rolfe v. County Board of Education of Lincoln County, Tenn. (D.C.Tenn.1966) 282 F.Supp. 192, 201, aff. 6th Cir., 391 F.2d 77, 81; Cato v. Parham (D.C.Ark.1968) 293 F.Supp. 1375, 1378, aff. 403 F.2d 12, further proceedings, 302 F.Supp. 129, 136 and 316 F.Supp. 678, 685; Kelley v. Altheimer, Arkansas Public School Dist. No. 22 (D.C.Ark.1969) 297 F.Supp. 753, 758–759, rev. and remanded on other grounds 378 F.2d 483; Pettaway v. County School Board of Surry County, Va. (D.C.Va.1964) 230 F.Supp. 480, 487 (citing and following *Bell*), remanded on other grounds, Griffin v. Board of Sup'rs of Prince Edward County, 339 F.2d 486.[23] It would seem clear, then, that the award of attorney's fees in school desegregation cases is normally governed by the rules enunciated in *Bell* and *Bradley* and only if the facts in the case accord with the test enunciated in those cases is an award generally permissible.

■ The District Court in this case made a specific finding that there had been "a good faith effort at desegregation on the part of responsible school officials and local government" and, applying the rule stated in *Bradley*, denied relief. We find no "compelling circumstances" for disturbing this finding of good faith. The mere fact that the school district's plans, as developed in hearings before the District Court, may have been invalidated by subsequent clarifying decisions of the Supreme Court is insufficient to establish bad faith on the part of the school board.

Cf., Local No. 149 I. U., U. A., A. & A. I. W. v. American Brake Shoe Co., *supra*, 298 F.2d at p. 216; Rogers v. Paul (8th Cir. 1965) 345 F.2d 117, 125–126. This Court itself did not anticipate the subsequent rulings of the Supreme Court in this area of school desegregation on a number of occasions.[24] We cannot fault the school board because it did not demonstrate greater powers of clairvoyance than either the District Court or this Court in anticipating the extrapolations of *Brown* by the Supreme Court. This conclusion disposes of the plaintiffs' claim for the allowance of attorney's fees based on any claim under *Bradley*.

■ There is, however, a unique feature of this case, involving at least a quasi-application of the "common fund" doctrine. It relates to the special relief granted by this decision and denied by the District Court. The plaintiffs have by this appeal secured for the students of this school system an additional right, a right of direct *pecuniary* benefit for all students assigned to schools without their neighborhood, a right not given them under the plan approved by the District Court. It is true the right is not represented by a "common fund" and has not resulted in a monetary recovery, against which attorney's fees may be charged but, so far as the students affected are concerned, "the effect * * * is the same as though a fund were created." 6 Moore's Federal Practice, *supra*; Sprague v. Ticonic Bank, *supra*. The students have secured a right worth approximately $60 per year to each of them. This *pecuniary* benefit to the students involved would, under normal circumstances, warrant the imposition of a charge against them for their proportionate share of a reasonable attorney's fee incurred in securing such

23. Cf., Dyer v. Love (D.C.Miss.1969) 307 F.Supp. 974, 987, which relied on *Bell* and *Bradley* to support award of attorney's fees in an apportionment case where the conduct of the defendants had been found to represent "unreasonable, obdurate obstinacy."

24. See Green v. County School Board (1968) 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, and Swann v. Board of Education (1971) 402 U.S. 1, and 43, 91 S. Ct. 1267 and 1284, 28 L.Ed.2d 554 and 586.

*pecuniary* benefit for them. It is not practical, however, to do this in this case and, too, to do so would defeat the basic purpose of the relief provided by the amendment in the decree, which was to secure for the student concerned transportation *without cost or deduction.* The only feasible solution in this peculiar situation would seem to lie in requiring the school district itself to supplement its provision of free transportation with payment of an appropriate attorney's fee to plaintiffs' attorneys for securing the addition of such a provision to the plan of desegregation. There are thus "dominating reasons" under the "exceptional circumstances" of this case to award attorney's fees for the services of plaintiffs' attorneys in securing for these students this *pecuniary* benefit. Cf., Sprague v. Ticonic Bank, *supra.*

In keeping with the foregoing conclusions, this cause is remanded to the District Court with direction (1) to amend the plan of desegregation for the defendant school district by requiring the school district to provide, either by the operation of a bus system of its own or by an acceptable arrangement with the private bus system now operating in the school district, free transportation for all students of the school system assigned to schools located beyond reasonable walking distance of their homes, and (2) to award reasonable attorney's fees to plaintiffs' attorneys as a part of the taxable costs herein for their services in securing an amendment in the plan of desegregation to provide for such free transportation.

Remanded with directions.

WINTER, Circuit Judge (concurring specially):

I concur in the majority's opinion except in regard to what is said with respect to the allowance of counsel fees. I would direct the allowance of counsel fees—and hence I also concur in this part of the judgment—but I would do so on a basis different from that expressed by the majority.

For a circuit which has been the leader in the allowance of counsel fees in school desegregation cases, Bell v. School Board of Powhatan County, Virginia, 321 F.2d 494 (4 Cir. 1963); Brown v. County School Board of Frederick County, Virginia, 327 F.2d 655 (4 Cir. 1964); Griffin v. Board of Supervisors of Prince Edward County, 339 F.2d 486 (4 Cir. 1964); Nesbit v. Statesville City Board of Education, 418 F.2d 1040 (4 Cir. 1969), I think that the court takes a false turn when it rests the allowance in this case on a quasi-application of the "common fund" doctrine. Sprague v. Ticonic Bank, 307 U.S. 166, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), in which this doctrine was announced, gives little support to the majority's result. There, there was a fund and the fund was *more* than sufficient to pay all claims. The allowance was prayed to be paid out of the fund. Presumably therefore, recovery on the claim would not be diminished by the allowance. 307 U.S. at 163, 59 S.Ct. 777, 83 L.Ed. 1184. The only question was whether an allowance from the fund was proper when there was not a true class suit. It was held that since plaintiff's recovery would be stare decisis of the claims of other potential plaintiffs similarly situated, the allowance could properly be made. Here, as the majority recognizes, there is no fund and it is necessary for the majority in effect to create one so that plaintiffs' lawyers can be compensated.

Conceptually, I see grave difficulties with correlating the award of counsel fees to pecuniary benefits to plaintiffs. The objective in a school desegregation case is the vindication of human rights and human rights are rarely translatable into dollar values. Of course, in this case it can be said that plaintiffs will be granted something having a measurable, pecuniary benefit, but in other cases where the right vindicated is not just lack of transportation, which carries a price tag, I can visualize substantial problems in determining whether the vindicated right has an ascertainable monetary value. And even in this case I

am left in doubt of the extent to which, if any, the aggregate pecuniary benefit to all of the plaintiffs is to be considered in determining the amount of the allowance to their attorneys. Ordinarily, aggregate monetary recovery is a substantial factor in fixing a fee for legal services. And if difficult here, assuming that total recovery is an element to be considered, what difficulties will arise in future cases where such a convenient measure of the pecuniary benefit is not at hand?

Where the court goes wrong is in its failure forthrightly to recognize that the decisions in the area of school desegregation subsequent to Brown v. Board of Education of Topeka, Kansas, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (*Brown I*), all hold that *Brown I* means just what it says and that beginning in 1964 the Supreme Court has said repeatedly that further delay in its full implementation will not be tolerated. Griffin v. Board of Supervisors of Prince Edward County, supra; Green v. County School Board of New Kent County, Va., 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969); Carter v. West Feliciana Parish School Board, 396 U.S. 226, 90 S.Ct. 467, 24 L.Ed.2d 382 (1969). I find quite unpersuasive the implied assertion that *Brown I* required, or was afforded, subsequent clarification, or that clairvoyance was required to foresee the result in Green v. County School Board, supra, and Swann v. Board of Education, 402 U.S. 1, 91 S. Ct. 1267, 28 L.Ed.2d 554 (1971). The only change in the course of direction of *Brown I* that I have been able to perceive is abandonment of the mandate of "all deliberate speed," as announced in Brown v. Board of Education of Topeka, Kansas, 349 U.S. 294, 301, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) (*Brown II*), and the substitution of "at once" and "now," as announced in *Griffin, Green, Holmes* and *Carter*. This change of direction in the immediacy of the application of *Brown I* does not dilute, modify or alter its substance, but I think it requires an extension of the rule we initially announced in *Bell*.

In Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed. 2d 1263 (1968), it was held, in a suit brought under Title II of the Civil Rights Act of 1964 to enjoin racial discrimination at five drive-in restaurants and a sandwich shop, that "one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." 390 U.S. 402, 88 S.Ct. 966. The rationale of the holding was "[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts."

Of course, in *Newman* there was a statute authorizing an award of counsel fees in a suit brought under Title II of the Act, and, strictly read, *Newman* simply decided how the statute should be applied. But the lesson to be learned from *Newman* is directly applicable here. We have the authority to award counsel fees in this equitable action; no statute is required. True, up to now, we have awarded them only "when it is found that the bringing of the action [to desegregate effectively] should have been unnecessary and was compelled by the school board's unreasonable, obdurate obstinacy." Bradley v. School Board of City of Richmond, Virginia, 345 F.2d 310, 321 (4 Cir. 1965). Such an application was proper in the context of "all deliberate speed" because, there, there was room for legitimate debate as to the period of time within which the conflicting demands of aggrieved plaintiffs and the community interest in a smooth, uneventful transition to a unitary system of public education were to be accommodated. But *Griffin, Green, Alexander* and *Carter* have created a different context.

By now the transition should have been accomplished. If it has not, the burden of persuasion to explain the delay should rest on those who have the power to accomplish the objective but who have failed to achieve it, and not on those whose rights continue to be violated. It seems to me, therefore, to be appropriate now to hold, in the light of those cases, that reasonable and adequate counsel fees should be awarded as of course unless special circumstances would render an award unjust.

There is every reason to arrive at this result. Despite the extensive enforcement responsibilities the statutes place on the Departments of Justice and Health, Education and Welfare and their immense resources, we know from the cases which come before us that they have been unable to shoulder the entire burden of litigation to make *Brown I* fully effective. The Department of Justice has not appeared in this stage of this very case. Indeed, it has appeared at only one stage of the tortuous history of the desegregation of the Norfolk schools. Brewer v. School Board of City of Norfolk, Virginia, 434 F.2d 408 (4 Cir. 1970). Almost all of the burden of litigation has been upon the aggrieved plaintiffs and those non-profit organizations which have provided them with representation. The time is *now* when those who vindicate these civil rights should receive fair and equitable compensation from the sources which have denied them, even in the absence of any showing of "unreasonable, obdurate obstinacy."

If we were to adopt the rule I champion, I could not find in the light of Swann and Davis v. School Comm'rs of Mobile County, 402 U.S. 33, 91 S.Ct. 1289, 28 L.Ed.2d 577 (1971), that there are any special circumstances rendering an award of counsel fees unjust. Hence, I join in directing the counsel fees be awarded.